## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

JEWISH FEDERATION OF METROPOLITAN
CHICAGO,

          Plaintiff,

       v.

BAYOU MANAGEMENT, LLC, SAMUEL ISRAEL, III,
DANIEL MARINO, BAYOU GROUP, LLC, BAYOU
SECURITIES, LLC, BAYOU ADVISORS, LLC, BAYOU
EQUITIES, LLC, BAYOU FUND, LLC, BAYOU SUPER
FUND, LLC, BAYOU NO LEVERAGE FUND, LLC,
BAYOU AFFILIATES FUND, LLC, BAYOU
ACCREDITED FUND, LLC, BAYOU OFFSHORE
FUND, LLC, BAYOU OFFSHORE FUND A, LTD,
BAYOU OFFSHORE FUND B, LTD, BAYOU
OFFSHORE FUND C, LTD, BAYOU OFFSHORE FUND
D, LTD, BAYOU OFFSHORE FUND E, LTD, BAYOU
OFFSHORE FUND F, LTD BAYOU OFFSHORE
MASTER FUND, LTD, and DOES 1-25, Inclusive,

          Defendants.

Civil Action No.

September 2, 2005

## COMPLAINT

Plaintiff, the Jewish Federation of Metropolitan Chicago (the "Federation" or "Plaintiff"), by and through its undersigned counsel, alleges with knowledge with respect to itself and its own acts, and otherwise upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.    This action arises out of a scheme crafted by Defendants, collectively a Connecticut money-management "hedge fund" firm and collection of hedge funds, to fraudulently convert and misappropriate Plaintiff's investment of over four million dollars ($4,000,000). Indeed, it is possible that Defendants have absconded with most of the four hundred million dollars ($400,000,000) of investments reportedly made by all Bayou investors.

2.   On or about March 1, 2004, Plaintiff made a two million dollar ($2,000,000) purchase of non-voting, redeemable, participating, Class A shares of the Bayou Offshore Fund B, Ltd. (the "Bayou Offshore Fund B") pursuant to a subscription for shares being offered by Defendants.

3.   On or about July 1, 2004, Plaintiff made a second two million dollar ($2,000,000) purchase of non-voting, redeemable, participating, Class A shares of the Bayou Offshore Fund B pursuant to a subscription for shares being offered by Defendants.

4.   Since its initial investment, Plaintiff received regular correspondence from Defendants regarding its investment, including detailed investment information such as purported performance figures, updated investment returns, top stocks traded, average number of positions traded, and sector exposure. This regular correspondence, as well as all communication or contact from Defendants, has ceased.

5.   On or about July 27, 2005, Defendants notified Plaintiff that the Bayou Family of Funds would be closing at the end of July 2005. Defendants represented both in this letter and contractually, that Plaintiff would receive a hundred percent (100%) payout on its investment.

6.   On or about July 29, 2005, Defendants provided Plaintiff with a purported status update on the audit/closure process of the firm. Defendants directed Plaintiff to the Amended and Restated Operating Agreement of Bayou Accredited Fund, LLC (the "Operating Agreement") for guidance as to how the liquidation of Plaintiff's funds would proceed. Defendants specifically noted that the terms in the Operating Agreement and the operating agreements for all the Bayou Family of Funds were identical.

7.   On or about August 11, 2005, Defendants provided Plaintiff with another purported status update regarding the closing process of the firm. Defendants stated that they

- 2 -

were attempting to return ninety percent (90%) of Plaintiff's investment within a week's time. Defendants also stated that they anticipated that the final ten percent (10%) of Plaintiff's investment would be paid by the close of August 2005. Defendants further represented that their offices would be open through the end of October. On information and belief, Defendants sent similar letters dated July 27 and August 11, 2005 to other investors in the various funds.

8. In their July and August 2005 correspondence to Plaintiff and other investors regarding the liquidation of the firm, Defendants at no time distinguished between the domestic and offshore funds or referred to any specific fund when discussing the liquidation of the firm or the refund of investments to investors.

9. On information and belief, since notifying its investors of the firm's liquidation, Defendants have issued refund checks to certain investors, which could not be drawn upon for lack of funds.

10. On or about August 26 and 30, 2005, Plaintiff made a demand upon Defendants for the immediate return of its monies.

11. To date Defendants have failed to respond to Plaintiff's demand or provide Plaintiff with monies owed and due to Plaintiff.

12. On information and belief, Defendants currently are being investigated for potential fraud by the Securities and Exchange Commission, the Federal Bureau of Investigation, the civil division of the Connecticut United States Attorney's Office, and the Securities and Business Investment Division of the Connecticut Department of Banking.

- 3 -

## PARTIES

13.    The plaintiff, Jewish Federation of Metropolitan Chicago, is an Illinois not-for-profit corporation with a principal place of business in Chicago, Illinois. The Jewish Federation serves as the leading organization promoting Jewish philanthropy in the greater Chicago community by raising and allocating funds to support local, national, and international services and institutions in areas of human welfare and health care, education and identity, culture and community, and rescue, resettlement and care for Jewish people in need throughout the world.

14.    Defendant Bayou Group, LLC is a limited liability company organized under the laws of Connecticut with its principal place of business in Stamford, Connecticut. The Bayou Group, LLC, on information and belief, includes the family of companies and individuals that created, own, operate, and control the following hedge funds: Bayou Fund, LLC, Bayou Super Fund, LLC, Bayou No Leverage, Fund LLC, Bayou Affiliates Fund, LLC, Bayou Accredited Fund, LLC, Bayou Offshore Fund, LLC, Bayou Offshore Fund A, LTD, Bayou Offshore Fund B, LTD, Bayou Offshore Fund C, LTD, Bayou Offshore Fund D, LTD, Bayou Offshore Fund E, LTD, Bayou Offshore Fund F, LTD and the Bayou Offshore Master Fund, LTD, (collectively, the "Bayou Family of Funds"). For purposes of this Complaint, the "Bayou Group" includes Bayou Group, LLC and Defendants Sam Israel III, Daniel Marino, Does 1-25, Bayou Fund, LLC, Bayou Management, LLC, Bayou Securities, LLC, Bayou Advisors, LLC, and Bayou Equities, LLC.

15.    Defendant Samuel Israel, III ("Israel") is a citizen of New York, and an individual who, upon information and belief, presently resides at 52 Oregon Road, Bedford Corners, NY 10549. Israel is the Chief Executive and Chief Investment Officer of the Bayou Group and a fund manager of the Bayou Family of Funds.

-4-

16. Defendant Daniel Marino ("Marino") is a citizen of Connecticut, and an individual who, upon information and belief, presently resides at 261 Bayberry Lane, Westport, CT 06880. Marino is the Chief Financial Officer ("CFO") of the Bayou Group and a fund manager of the Bayou Family of Funds.

17. Defendant Bayou Management, LLC is a limited liability management firm organized under the laws of New York with a principal place of business in Stamford, Connecticut. The company, upon information and belief, operates, controls, and manages the Bayou Family of Funds.

18. Defendant Bayou Securities, LLC is a limited liability broker-dealer firm organized under the laws of New York with a principal place of business in Stamford, Connecticut. The company, upon information and belief, is a subsidiary of the Bayou Group that conducts trades involving the Bayou Family of Funds for the Bayou Group.

19. Defendant Bayou Advisors, LLC is a limited liability company organized under the laws of Delaware with a principal place of business in Stamford, Connecticut. The company, on information and belief, is a member of the Bayou Group.

20. Defendant Bayou Equities, LLC is a limited liability company organized under the laws of Delaware with a principal place of business in Stamford, Connecticut. The company, on information and belief, is a member of the Bayou Group.

21. Defendant Bayou Fund, LLC is a limited liability company organized under the laws of New York with a principal place of business in Stamford, Connecticut. The company is a domestic hedge fund managed by Bayou Management, LLC. The company, on information and belief, is a member of the Bayou Group.

22. Defendant Bayou Super Fund, LLC is a limited liability company organized under the laws of Delaware with a principal place of business in Stamford, CT. Upon information and belief, the company is a member of the Bayou Family of Funds.

23. Defendant Bayou No Leverage Fund, LLC is a limited liability company organized under the laws of Delaware with a principal place of business in Stamford, Connecticut. Upon information and belief, the company is a member of the Bayou Family of Funds.

24. Defendant Bayou Affiliates Fund, LLC is a limited liability company organized under the laws of Delaware with a principal place of business in Stamford, Connecticut. Upon information and belief, this company is a member of the Bayou Family of Funds.

25. Defendant Bayou Accredited Fund, LLC is a limited liability company organized under the laws of Delaware with a principal place of business in Stamford, Connecticut. Upon information and belief, this company is a member of the Bayou Family of Funds.

26. Defendant Bayou Offshore Fund, LLC is a limited liability company organized under the laws of Delaware. The Bayou Offshore Fund, LLC, on information and belief, is comprised of the following hedge funds: Bayou Offshore Fund A, LTD, Bayou Offshore Fund B, LTD, Bayou Offshore Fund C, LTD, Bayou Offshore Fund D, LTD, Bayou Offshore Fund E, LTD, Bayou Offshore Fund F, LTD, and the Bayou Offshore Master Fund, LTD. Upon information and belief, these entities are members of the Bayou Family of Funds.

27. Defendant Bayou Offshore Fund A, LTD, upon information and belief, is a company incorporated under the laws of the Cayman Islands and member of the Bayou Family of Funds.

- 6 -

28.     Defendant Bayou Offshore Fund B, LTD ("Bayou Offshore Fund B") is a company incorporated under the laws of the Cayman Islands and a member of the Bayou Family of Funds.

29.     Defendant Bayou Offshore Fund C, LTD, upon information and belief, is a company organized under laws of the Cayman Islands and a member of the Bayou Family of Funds.

30.     Defendant Bayou Offshore Fund D, LTD, upon information and belief, is a company organized under laws of the Cayman Islands and a member of the Bayou Family of Funds.

31.     Defendant Bayou Offshore Fund E, LTD, upon information and belief, is a company organized under laws of the Cayman Islands and a member of the Bayou Family of Funds.

32.     Defendant Bayou Offshore Fund F, LTD, upon information and belief, is a company organized under laws of the Cayman Islands and a member of the Bayou Family of Funds.

33.     Defendant Bayou Offshore Master Fund, LTD, upon information and belief, is a company organized under the laws of the Cayman Islands and a member of the Bayou Family of Funds.

34.     Defendants Does 1 through 25 are individuals with unknown residence and business entities of unknown form. Plaintiff does not know the names and capacities of the defendants sued herein as Does 1 through 25, inclusive, and therefore sues said defendants by such fictitious names. Plaintiff is informed and believes, and on that basis alleges, that defendants sued herein as Does 1 through 25, inclusive, were either corporate entities, agents,

- 7 -

employees, representatives, subcontractors, principals, officers or directors of the Bayou Group, acting within the course and scope of their agency or employment or in some other capacity responsible to provide relief set forth in the Complaint. As to the individual Does, there exists, and at all times herein mentioned there existed, a unity of interest and ownership between said Does and the Bayou Group, such that any individuality and separateness between said individual Does and the Bayou Group has ceased and the Bayou Group is the alter ego of said individual Does in that the Bayou Group merely shells, instrumentalities, and conduits through which said individual Does carried on his/her/their business in the corporate name exactly as he or she had conducted it previous to incorporation, exercising complete control and dominance of such business to such an extent that any individuality or separateness of the Bayou Group and said individual Does do not, and at all times herein mentioned did not, exist. Adherence to the fiction of the separateness existence of the Bayou Group from said individual Does would permit an abuse of the corporate privilege and would sanction fraud and promote injustice in this case. When their true names and capacities are ascertained, Plaintiff will amend this Complaint by inserting their true names and capacities of the Does herein. Each reference in this Complaint to "Defendant," "Defendants," or a specifically named defendant refers also to all Defendants sued under such fictitious names.

35.    All defendants will hereinafter be collectively referred to as the "Defendants."

## JURISDICTION AND VENUE

36.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), in that this action is between citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interest and costs.

37.     This Court has personal jurisdiction over the defendants who reside in the State of Connecticut, and/or transact business in the State of Connecticut and have certain minimum contacts with Connecticut, and/or in concert with one another engaged in tortious conduct in the State of Connecticut such that maintenance of this suit does not offend traditional notions of fair play and substantial justice.

38.     Venue is appropriate in this District pursuant to 28 U.S.C. § 1391 in that because a substantial part of the events giving rise to the Plaintiff's claims herein occurred in this District.

## FACTS

### The Bayou Group

39.     On information and belief, Defendant Israel co-founded the Bayou Group in 1996 with the incorporation of Bayou Fund LLC. Bayou Securities, LLC and Bayou Management, LLC were added to the Bayou Group in 1997. Bayou Advisors LLC and Bayou Equities LLC were added to the Bayou Group in 2001. The creation of the Bayou Family of Funds was targeted toward wealthy individuals and institutions with at least one million dollars ($1,000,000) in net worth and two hundred thousand dollars ($200,000) in annual income. The Bayou Group set a minimum investment of $250,000 for investors to invest in any of the funds in the Bayou Family of Funds. This minimum investment was a lower minimum investment than are typical of other hedge funds and an attractive attribute of the Bayou Group. The Bayou Group did not charge investors a management fee and took an incentive fee of twenty percent (20%) of the funds' annual gains.

40.     Bayou marketing materials advertised Defendant Israel to investors as a "third generation trader" with years of fundamental analysis, trading skills, and portfolio management.

Purportedly, Defendant Israel was actively involved in equity trading on behalf of hedge funds for nearly twenty (20) years. Defendants also advertised to investors that Defendant Israel was formerly employed at Omega Advisors, Inc. from 1992 to 1996, where he managed more than four hundred million ($400,000,000) of investments as a head trader for a prominent Wall Street investor. Defendants boasted that Defendant Israel made General Partner of that fund, in which was responsible for all equity and financial futures, executions, as well as sharing responsibility for hedging the portfolio through the use of futures and options. On information and belief, Defendant Israel was employed at Omega Advisors, Inc. from January 1994 to June 1995 and, contrary to Defendants' statements, did not have any trading discretion as a manager at Omega. Defendants, on information and belief, made these representations to attract and solicit investors, like Plaintiff, to invest in the Bayou Family of Funds.

41.     Until recently, the Bayou Group represented to Plaintiff and, on information and belief, to the other investors, that it had over four hundred million dollars ($400,000,000) in assets under management from approximately one hundred (100) investors. The Bayou Group stated that it is regulated by the National Association of Securities Dealers ("NASD") through its brokerage firm, Bayou Securities, LLC. The Bayou Group represented to investors that it offered investors added protection because the brokerage firm was audited on a periodic and unexpected basis by the NASD and the Securities and Exchange Commission ("SEC").

42.     As a further incentive to attract investors, Defendants did not require a lockup arrangement with investors and allowed investors to leave the fund on relatively short notice.

43.     Defendants also represented to investors that its firm was audited annually by an "outside source," Richmond-Fairfield Associates, but omitted to tell investors that Defendant Marino, who Defendants represented as a certified public accountant, filed the Articles of

Organization for Richmond-Fairfield Associates in October 2000. Plaintiff was not aware of Defendant Marino's ties to Bayou's internal auditor, and Defendants intentionally concealed this information and made this omission in order to create the false impression that Bayou was independently audited. Other investors, on information and belief, were not aware of the connection between the CFO of the Bayou Group and Bayou's supposedly independent auditing company.

**Plaintiff's Investment in the Bayou Family of Funds**

44.     On or about March 1, 2004, Plaintiff purchased non-voting, redeemable, participating, Class A shares of the Bayou Offshore Fund B, pursuant to a subscription for shares being offered by Defendants. Plaintiff made a wire transfer of two million dollars ($2,000,000) to Admiral Administration Ltd. in the Cayman Islands to purchase the shares.

45.     On or about March 18, 2004, Defendants acknowledged receipt Plaintiff's payment, stating that the subscription would be processed for value as of March 1, 2004.

46.     On or about July 1, 2004, Plaintiff made a second purchase of non-voting, redeemable, participating, Class A shares of the Bayou Offshore Fund B pursuant to a subscription for shares being offered by Defendants. Plaintiff made a wire transfer of two million dollars ($2,000,000) to Admiral Administration Ltd. in the Cayman Islands to purchase the shares.

47.     On or about July 7, 2004, Defendants acknowledged receipt Plaintiff's payment and notice of additional investment, stating that the subscription would be processed for value as of July 1, 2004. Plaintiff's total initial investment in the Bayou Offshore Fund B was four million dollars ($4,000,000).

**Relationship Between Defendants and Plaintiff**

48.     Defendants attempted to foster and develop strong investor relations. Defendants made numerous representations to investors, including Plaintiff, about the security of their investment, including that the Bayou Group offered investors added protection because its subsidiary, Bayou Securities, LLC was audited on a periodic and unexpected basis by the NASD and the SEC.

49.     In a further effort to promote investor confidence and provide a sense of trust and security to investors that Defendants were appropriately handling their investments, Defendants were in regular communication with the investors, including Plaintiff. Defendants sent investors, including Plaintiff, weekly email correspondence that purportedly included detailed investment information regarding performance, updated investment returns, top stocks traded, average number of positions traded, and sector exposure. This investment information was captured in a document that was updated weekly and referred to by Defendants as, "Bayou Updated Performance Report" or "Bayou's Estimated Rate of Return." Additionally, Defendants sent Plaintiff monthly "NAV Statements" (net asset value) summarizing the present value of Plaintiff's specific investments in the Bayou Offshore Fund B.

50.     Defendants also facilitated investor confidence by conducting periodic conference calls with their investors, including Plaintiff, referred to as "Bayou Member Update Conference Calls." During these Conference calls, Defendants invited questions from investors and discussed issues such as the Bayou Group's performance, direction and related firm events, the economy, world events, and financial markets. On information and belief, the last such conference call hosted by Defendants was on January 11, 2005.

51. Pursuant to the Amended and Restated Operating Agreement governing the Bayou Offshore Fund B (the "Operating Agreement"), Defendants are permitted to purchase, invest, trade and sell, in capital stock, subscriptions, warrants, bonds, notes, debentures, convertible securities, rights, options, puts and calls relating thereto and other securities of companies (collectively, "securities"). Defendants are also permitted to engage in other lawful securities and commodities transactions and advise customers on investment decisions.

52. Pursuant to the Operating Agreement, Defendants are permitted to possess, transfer or otherwise deal in, and to exercise all rights, powers privileges and other incidents of ownership or possession with respect to, securities, commodities or other property and funds held by the Bayou Group with the objectives of the preservation, protection, improvement or enhancement of value thereof.

53. As managers of the Bayou Family of Funds, Defendants Israel and Marino held themselves out as being responsible for directing, managing, and controlling Plaintiff's investments in the Bayou Offshore Fund B. Plaintiff agreed to give Defendants full and complete authority, power, and discretion to manage and control, on behalf of Plaintiff and the other investors, the business, affairs and properties of Plaintiff's investments in the Bayou Offshore Fund B, to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of Plaintiff's investments, and to preserve and grow Plaintiff's and the other investors' investments. Defendants represented that in the event that the firm's risk protection of assets failed, Bayou Securities, LLC carried a one million ($1,000,000) Fidelity Bond.

54. Pursuant to the Operating Agreement, Defendants were obligated to perform their managerial duties in good faith, in a manner they reasonably believed to be in the best interests

of the Bayou Offshore Fund B, and with such care as an ordinarily prudent investment manager would use under similar circumstances.

55. Defendants are liable, individually and, to the extent they acted in concert with one another, are liable collectively to Plaintiff for any loss or damage resulting from fraud, deceit, gross negligence, willful misconduct, or a wrongful taking of funds by the Defendants.

56. Plaintiff reasonably relied on Defendants to perform their managerial duties in good faith, in a manner they reasonable believed to be in the best interests of the Bayou Offshore Fund B, and with such care as an ordinarily prudent investment manager would use under similar circumstances. Plaintiff also reasonably relied upon the truth of Defendants' repeated representations regarding investments, including but not limited to, the manner in which Plaintiff's money was being invested, the success of Plaintiff's investment, and the success of the Bayou Family of Funds generally.

57. Plaintiff also reasonably relied upon Defendants to comply with all laws, fiduciary duties, and contractual obligations under the Operating Agreement. Plaintiff further relied upon Defendants to comply with their representation that they would take only twenty percent (20%) of the investments' profits as a fee.

58. Based on Defendants' multiple representations, Plaintiff invested with Defendants over other alternative investments, maintained its investment with Defendants, and chose not to exercise its right of redemption prior to the July 27, 2005 letter. To the extent Plaintiff is unable to recover all of its investment in the Bayou Offshore Fund B because of actions by one or more of the Defendants, Plaintiff will have relied to its detriment on each of the foregoing representations, which only the Defendants knew were false when made.

**Recent Activity of the Bayou Group**

     59.     Defendants represented to Plaintiff that for the 2004 trading year, it enjoyed an estimated rate of return of 12.8% compared to the 9% gain by its benchmark, the Standard & Poor's 500-stock average ("S&P 500").

     60.     As evidence of their continued success, as recently as June 30, 2005, Defendants sent Plaintiff an Estimated Rate of Return report claiming that Bayou's funds were up 4.6% for the year, compared to the decline of 1.7% in the S&P.

     61.     Since its initial investment, Plaintiff regularly received NAV Statements from Defendants which purported to summarize the present value of Plaintiff's specific investments in the Bayou Offshore Fund B. Over the last eight months, Defendants' NAV Statements purported to show a consistent growth in Plaintiff's investment value in the Bayou Offshore Fund B. According to Defendants' reports to Plaintiff, this increase in value ceased after April 2005: the December 2004 NAV Statement listed Plaintiff's total investment value as $4,364,813; the January 2005 NAV Statement listed Plaintiff's total investment value as $4,390,564; the February 2005 NAV Statement listed Plaintiff's total investment value as $4,434,988; the March 2005 NAV Statement listed Plaintiff's total investment value as $4,529,631; the April 2005 NAV Statement listed Plaintiff's total investment value as $4,537,784; the May 2005 NAV Statement listed Plaintiff's total investment value as $4,563,813; the June 2005 NAV Statement listed Plaintiff's total investment value as $4,563,813; and the July 2005 NAV Statement listed Plaintiff's total investment value as $4,563,813. Defendants offered no explanation to Plaintiff as to why its total investment did not increase in value after April 2005 or why the value remained static after May 2005.

- 15 -

62.     To the extent that Defendants redirected, dissipated, removed or otherwise lost funds from Plaintiff's account at any time since Plaintiff's initial investment, or otherwise falsely reported the value of Plaintiff's investment, each and all of Defendants' foregoing statements about the value of Plaintiff's investment were knowingly false when made.

**Closure of the Bayou Family of Funds**

63.     On or about July 27, 2005, Defendants notified Plaintiff of the closing of the Bayou Family of Funds at the end of July 2005.  Defendants made specific representations in this correspondence and pursuant to their contractual obligations, that Plaintiff would receive a hundred percent (100%) payout on its investment.

64.     On or about July 29, 2005, Defendants provided Plaintiff with a purported status update on the audit/closure process of the firm.  Defendants directed Plaintiff to the Operating Agreement for guidance as to how the liquidation of Plaintiff's funds would proceed. Defendants specifically noted that the terms in the Operating Agreement and the operating agreements for all the Bayou Family of Funds were identical.

65.     On or about August 11, 2005, Defendants provided Plaintiff with another purported status update regarding the closing process of the firm.  Defendants stated that they were attempting to return ninety percent (90%) of Plaintiff's investment within a week's time. Defendants also stated that they anticipated that the final ten percent (10%) of Plaintiff's investment would be paid by the close of August 2005.  Defendants also represented that the process of refunding investors had been delayed by auditing work aimed at insuring that the firm's funds closed with accurate books.  In this correspondence, Defendants also detailed the process by which Plaintiff and all investors would receive their investment refund.  Defendants represented that refunds would be made by check for both the ninety percent (90%) refund and

- 16 -

the ten percent (10%) remaining balance payment. Defendants directed investors to send all communications to them at 40 Signal Road, Stamford, CT 06902 or at info@bayougrouyp.com and represented that their offices would be open through the end of October.

66. On information and belief, Defendants sent similar letters dated July 27 and August 11, 2005 to other investors in the various funds.

67. In their July and August 2005 correspondence to Plaintiff and other investors regarding the liquidation of the firm, Defendants at no time distinguished between the domestic and offshore funds or referred to any specific fund when discussing the liquidation of the firm or the refund of investments to investors.

68. On information and belief, since notifying its investors of the firm's liquidation, Defendants have issued refund checks to certain investors, which could not be drawn upon for lack of funds.

69. Although unnecessary in light of Defendants' July 27 and August 11, 2005 notices of voluntary liquidation of the Bayou Family of Funds, on August 26, 2005, Plaintiff gave notice of withdrawal and redemption of all assets and funds invested in Bayou Offshore Fund B, pursuant to the Amended and Restated Operating Agreement of Bayou Accredited Fund, LLC, the Amended and Restated Articles of Association of Bayou Offshore Fund B, Ltd., and any other application agreement or articles of association.

70. On or about August 30, 2005, Plaintiff made a demand on Defendants for the immediate return of all its monies.

71. To date, Defendants have failed to respond to Plaintiff or provide Plaintiff with monies owed and due to Plaintiff.

72.     To the extent Defendants, either individually or in acting in concert with one another, have taken steps or have omitted to take steps that have redirected, dissipated, spent, removed or otherwise lost some or all of Plaintiff's investment, Defendants are individually or collectively liable to Plaintiff under the following causes of action.

## CAUSES OF ACTION

### COUNT I
(Breach of Contract)

73.     Plaintiff repeats and incorporates by reference the allegations set forth in paragraphs 1 to 72 of this Complaint as if fully set forth herein.

74.     Plaintiff and Defendants Israel and Bayou Management, LLC were and are parties to the Operating Agreement for the Bayou Offshore Fund B, a legally valid and enforceable contract involving bargained for consideration.

75.     Each of the foregoing Defendants, and to the extent any other Defendants have acted in concert with them, those Defendants collectively, have materially breached their contractual obligations with Plaintiff by, among other things, failing to return monies paid by Plaintiff to Defendants despite repeated requests by Plaintiff and failing to return Plaintiff's investment despite representations to Plaintiff that such funds would be refunded by the end of August, 2005.

76.     Plaintiff has fully performed its obligations under the Agreements or its performance has otherwise been excused.

77.     As a direct and proximate cause of Defendants' breaches, Plaintiff has sustained actual damages in excess of four million dollars ($4,000,000).

- 18 -

## COUNT II
(Unjust Enrichment)

78.     Plaintiff repeats and incorporates by reference the allegations set forth in paragraphs 1 to 77 of this Complaint as if fully set forth herein.

79.     Defendants have received and continue to receive the benefit of Plaintiff's monies by failing to return monies owed and due to Plaintiff and has failed to perform their obligations under their contractual agreements with Plaintiff.

80.     Plaintiff has made demand on Defendants for return of the monies entrusted to Defendants.

81.     Despite this demand, Plaintiff has not received the monies which are rightfully owed and due to Plaintiff.

82.     By virtue of Defendants' refusal to return the monies due, Defendants retain the monies and benefits deriving therefrom which in justice and equity belong to Plaintiff.

## COUNT III
(Breach of Fiduciary Duty)

83.     Plaintiff repeats and incorporates by reference the allegations set forth in paragraphs 1 to 82 of this Complaint as if fully set forth herein.

84.     As manager of the Bayou Offshore Fund B, Defendants Israel and Marino held themselves out as being responsible for directing, managing, and controlling Plaintiff's investments in the Bayou Offshore Fund B. Plaintiff agreed to give Defendants full and complete authority, power, and discretion to manage and control the business, affairs and properties of the Plaintiff's investments in the Bayou Offshore Fund B, to make all decisions regarding those matters, and to perform any and all other acts or activities customary or incident to the prudent management of Plaintiff's investments in the Bayou Offshore Fund B.

- 19 -

85. As a result, Defendants Israel and Marino were placed in a position of trust and respect with the investors in the Bayou Family of Funds and owed Plaintiff a duty of care and loyalty in faithfully managing Plaintiff's investment.

86. Plaintiff reasonably relied upon Defendants Israel and Marino to perform their managerial duties in good faith, in a manner they reasonably believed to be in the best interests of the Bayou Offshore Fund B and its investors, and with such care as an ordinarily prudent investment manager would use under similar circumstances.

87. Defendants Israel and Marino breached their fiduciary duties to Plaintiff by failing to return the funds to Plaintiff upon demand, and to the extent Defendants have redirected, dissipated, removed or otherwise lost some or all of Plaintiff's investment by unlawfully converting and misappropriating Plaintiff's investment.

88. As a direct and proximate result of Defendants' breach of fiduciary duty, Plaintiff has been deprived of the benefit, and as a result, suffered and continues to suffer damages and other harm in excess of four million dollars ($4,000,000).

## COUNT IV
### (Conversion)

89. Plaintiff repeats and incorporates by reference the allegations set forth in paragraphs 1 to 88 of this Complaint as if fully set forth herein.

90. Defendants were entrusted with substantial monies invested by Plaintiff for the purchase of securities in the Bayou Offshore Fund B.

91. Plaintiff has an ownership or possessory interest in these sums, and the Defendants, by failing to return those amounts upon demand, have intentionally and wrongfully exercised dominion and control over these monies and deprived Plaintiff of its control, dominion and ownership in these monies.

- 20 -

92.     Plaintiff has a right to recover immediate possession of all converted sums from the Defendants, jointly and severally, or from any other person who claims possession thereof.

93.     Defendants' conversion is sufficiently grave so as to entitle Plaintiff to recover all of the monies lost, including reasonably interest and profits.

94.     Defendants, acting in concert, took such actions in an intentional and outrageous manner intended to exploit Plaintiff's trust in them.

95.     As a direct and proximate cause of these conversions, Plaintiff has suffered damages in the amounts diverted.

## COUNT V
### (Fraud)

96.     Plaintiff repeats and incorporates by reference the allegations set forth in paragraphs 1 to 95 of this Complaint as if fully set forth herein.

97.     Defendants knowingly and intentionally misrepresented material facts, and intentionally failed to disclose its unlawful actions in connection with Plaintiff's investments in the Bayou Offshore Fund B, as detailed in paragraphs 40-43 and 48-72 of the Complaint, and incorporated here by reference.

98.     Defendants' conduct was knowing, intentional, willful and malicious.

99.     Defendants knew at the time they made these representations that their representations to Plaintiff were false or misleading, and/or were reckless as to their truth or falsity.

100.     Defendants made these misrepresentations intending that Plaintiff would rely upon their misrepresentations and omissions and knew that Plaintiff did rely on them in connection with Plaintiff's investment in the Bayou Offshore Fund B.

- 21 -

101.    Plaintiff relied upon Defendants' false statements as being true, and relied and acted upon them to its detriment.

102.    Plaintiff's reliance upon Defendants' fraudulent misrepresentations and omissions was reasonable and justifiable.

103.    As a direct and proximate result of Defendants' fraudulent misrepresentations and omissions, Plaintiff has sustained actual damages in excess of four million dollars ($4,000,000).

## COUNT VI
(Negligent Misrepresentation)

104.    Plaintiff repeats and incorporates by reference the allegations set forth in paragraphs 1 to 103 of this Complaint as if fully set forth herein.

105.    Through the acts and omissions described above, Defendants, in the course of their business, misrepresented material facts and failed to disclose its unlawful actions in connection with Plaintiff's investments in the Bayou Offshore Fund B, as detailed in paragraphs 40-43 and 48-72 of the Complaint, and incorporated here by reference.

106.    In the ordinary course of business, and in the circumstances of Plaintiff's investment in Defendants' Bayou Family of Funds, Defendants owed Plaintiff a duty of reasonable care in the veracity, accuracy and material completeness of their communications with Plaintiff concerning the nature, quality and value of the investments being managed.

107.    Defendants knew, should have known, or had the means of knowing that their representations to Plaintiff were materially false and misleading and failed to exercise reasonable care or competence in obtaining or communicating the information conveyed to Plaintiff.

108.    Defendants made their misrepresentations intending that Plaintiff would rely upon them and knew that Plaintiff did rely on them in connection with Plaintiff's investment in the Bayou Offshore Fund B.

109.    Plaintiff's reliance on Defendants' misrepresentations was reasonable and justifiable.

110.    As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff has sustained actual damages in excess of four million dollars ($4,000,000).

### COUNT VII
(Civil Conspiracy)

111.    Plaintiff repeats and incorporates by reference the allegations set forth in paragraphs 1 to 110 of this Complaint as if fully set forth herein.

112.    Defendants have combined and acted in concert with a common purpose to defraud Plaintiff, to make material and knowing misrepresentations and/or omissions, and to unlawfully convert and misappropriate monies belonging to Plaintiff.

113.    All of the Defendants have combined and acted in concert to unlawfully control, manage, convert and misappropriate Plaintiff's investment funds in the Bayou Offshore Fund B.

114.    Through combining in the foregoing manner, Defendants have been able to commit the aforementioned wrongful acts that each may have been unable to commit alone.

115.    As a direct and proximate result of Defendants' unlawful conduct and conspiracy, Plaintiff suffered and continues to suffer substantial damages in excess of four million dollars ($4,000,000).

### COUNT VIII
(Violation Connecticut Unfair Trade Practices Act,
Conn. Gen. Stat. § 42-110a, *et. seq.*)

116.    Plaintiff repeats and incorporates by reference the allegations set forth in paragraphs 1 to 115 of this Complaint as if fully set forth herein.

117.    At all relevant times herein, Defenders were engaged in the conduct or trade or commerce as those terms are defined in the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et. seq.*

118.    To the extent Defendants have converted Plaintiff's funds for their own use or have otherwise redirected, dissipated, removed or lost Plaintiff's funds in breach of the representations made to Plaintiff and the position of trust Defendants undertook, Defendants' conduct was immoral, unethical, oppressive and unscrupulous and offended public policy and established concepts of fairness.

119.    As a result of Defendants' conduct, Plaintiff has sustained substantial injury and ascertainable loss of money to be proved at trial.

## COUNT IX
(Rescission)

120.    Plaintiff repeats and incorporates by reference the allegations set forth in paragraphs 1 to 119 of this Complaint as if fully set forth herein.

121.    Defendants made numerous material representations to Plaintiff about their ability, success and reputation to direct, manage, and control Plaintiff's investments in the Bayou Offshore Fund B.

122.    Plaintiff reasonably relied upon these representations and based on these representations, Plaintiff entered into a written contract with Defendants by the terms of which Plaintiff purchased non-voting, redeemable, participating, Class A shares of the Bayou Offshore Fund B pursuant to a subscription for shares being offered by Defendants.

123.    Defendants also made numerous material representations in the Agreement regarding their obligations to perform their managerial duties in good faith, in a manner they

- 24 -

reasonably believed to be in the best interests of the Bayou Offshore Fund B, and with such care as an ordinarily prudent investment manager would use under similar circumstances.

124.   Plaintiff reasonably relied on these representations and based on these representations, Plaintiff agreed to give Defendants full and complete authority, power, and discretion to manage and control, on behalf of Plaintiff and the other investors, the business, affairs and properties of Plaintiff's investments in the Bayou Offshore Fund B, to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of Plaintiff's investments, and to preserve and grow Plaintiff's and the other investors' investments.

125.   On or about March 1, 2004, Plaintiff made a two million dollar ($2,000,000) payment to Defendants, and thereby performed everything required by the contract to be performed by Plaintiff.

126.   On or about July 1, 2004, Plaintiff made a second two million dollar ($2,000,000) payment to Defendants, and thereby performed everything required by the contract to be performed by Plaintiff.

127.   Because Plaintiff made its investment and entered into the Agreement with Defendants based on fraudulent statements, the agreements should be rescinded and Plaintiff should receive its four million dollar ($4,000,000) as restitution.

128.   By reason of Defendants' failure to restore the consideration paid by Plaintiff, Plaintiff has been damaged in the sum exceeding four million dollars ($4,000,000), together with interest thereon.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff demands the following relief:

- 25 -

1.   That the Court enter judgment against Defendants and in Plaintiff's favor on all

     counts for compensatory damages in an amount to be determined at trial, plus pre-

     and post-judgment interest.

2.   That the Court issue a temporary restraining order to preserve *status quo* by

     freezing Defendants' assets, prohibiting the destruction of documents and data,

     and providing for notice of the temporary restraining order to Defendants'

     affiliates, employees, agents and other third-parties who may be holding assets or

     document subject to the order.

3.   That the Court order that the assets of Defendants be held in a constructive trust

     for the benefit of Plaintiff.

4.   That the Court order an accounting of the amount of investment assets and funds

     that are due to Plaintiff.

5.   That the Court award Plaintiff punitive or multiple damages pursuant to Conn.

     Gen. Stat. § 42-110g(a);

6.   That the Court award Plaintiff its costs and attorneys' fees pursuant to Conn. Gen.

     Stat. § 42-110g(d);

7.   That the Court, through its refutable power, Order that the agreements between

     Plaintiff and Defendants be rescinded and that all amounts provided by Plaintiff

     to Defendants be returned as restitution; and

8.   That the Court grant Plaintiff such other and further relief as this Court deems just

     and equitable.

## JURY DEMAND

- 26 -

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all claims so triable.

Jewish Federation of Metropolitan Chicago
By its attorneys,

William L. Prickett
Kent D.B. Sinclair, Fed. Bar No. ct14649
Noah Lang
Jodi D. Luster
SEYFARTH SHAW, LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210
Tel: 617-946-4800
Fax: 617-946-4801
ksinclair@seyfarth.com

Gerald T. Giaimo ct14885
Tyler Cooper & Alcorn, LLP
205 Church St.
New Haven, CT 06509-1910
Tel: 203-784-8557

Fax: 203-865-7865
Giaimo@tylercooper.com

- 28 -