UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEWISH FEDERATION OF METROPOLITAN CHICAGO,<br><br>Plaintiff,<br><br>v.<br><br>BAYOU MANAGEMENT, LLC, SAMUEL ISRAEL, III, DANIEL MARINO, BAYOU GROUP, LLC, BAYOU SECURITIES, LLC, BAYOU ADVISORS, LLC, BAYOU EQUITIES, LLC, BAYOU FUND, LLC, BAYOU SUPER FUND, LLC, BAYOU NO LEVERAGE FUND, LLC, BAYOU AFFILIATES FUND, LLC, BAYOU ACCREDITED FUND, LLC, BAYOU OFFSHORE FUND, LLC, BAYOU OFFSHORE FUND A, LTD, BAYOU OFFSHORE FUND B, LTD, BAYOU OFFSHORE FUND C, LTD, BAYOU OFFSHORE FUND D, LTD, BAYOU OFFSHORE FUND E, LTD, BAYOU OFFSHORE FUND F, LTD BAYOU OFFSHORE MASTER FUND, LTD, and DOES 1-25, Inclusive,<br><br>Defendants. | Civil Action No.<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>September 2, 2005 |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY AND PRESERVATION OF DOCUMENTS

### INTRODUCTION

Plaintiff, the Jewish Federation of Metropolitan Chicago (the "Federation" or "Plaintiff"), seeks leave of court to serve limited, immediate discovery on Defendants and any third parties who maintain records and other discoverable material regarding Defendants' financial dealings. An order allowing for expedited discovery is essential for Plaintiff and other similarly situated parties to pursue legal remedies to which they may be entitled as a result of any illegal actions by Defendants described in the accompanying Complaint and below.

Plaintiff invested $4 million in one of Defendants' offshore funds through two separate purchases in 2004. After making the investments, Plaintiff received regular correspondence from Defendants regarding the status of the fund. In a letter dated July 27, 2005, however, Defendants notified Plaintiff that all the Defendant funds would be closing at the end of July 2005 and that Plaintiff would, upon completion of an audit, receive back 100 percent of its investment. On August 11, 2005, Defendants stated in a second letter that they would be refunding 90 percent of Plaintiff's investment within one week's time, and that they anticipated refunding the remaining 10 percent to Plaintiff before the end of August 2005. Since the August 11 letter, Plaintiff has received no money from Defendants, and Defendants have not communicated with Plaintiff or, to Plaintiff's knowledge, any other investors, including responses to letters or answered phone calls, concerning the investments since August 11. Other investors who were issued refund checks were reportedly unable to draw upon those checks due to lack of funds. Plaintiff seeks expedited discovery to determine the whereabouts of Defendants, the status of the money tied up in Defendants' funds, and any other information relating to the status of Plaintiff's investment in the Defendant funds.

## I. THE JEWISH FEDERATION IS ENTITLED TO EXPEDITED DISCOVERY.

While Federal Rule of Civil Procedure 34 generally provides that a party upon whom a document request is served must respond within thirty days, the rule also specifically permits that "[a] shorter . . . time may be directed by the court." Fed. R. Civ. P. 34(b). In addition, Federal Rule of Civil Procedure 26 "provides very broad discovery and gives the trial court wide discretion to manage the process." State of New York v. U.S. Metals Refining Co., 771 F.2d 796, 805 (3d Cir. 1985). Expedited discovery is routinely granted in connection with preliminary injunction hearings. See Sica v. Connecticut, 331 F. Supp. 2d 82, 87 (D. Conn.

2004) (noting that "[i]t is this Court's ordinary practice to permit limited and reciprocal expedited discovery in connection with preliminary injunction hearings").

Courts have interpreted these provisions to permit expedited discovery when, as here, the Plaintiff shows (1) irreparable injury; (2) some probability of success on the merits; (3) some connection between the expedited discovery and the avoidance of the irreparable injury; and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted. See Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs. Ltd., No. 94 Civ. 5620 (JFK), 1994 U.S. Dist. LEXIS 18457, at *7 (S.D.N.Y. 1994) (citing cases).[1]

Courts also routinely allow parties to conduct expedited discovery in advance of a Rule 26(f) conference where the moving party establishes "good cause" for such discovery. See, e.g., Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273, 275-76 (N.D. Cal. 2002); Entertainment Tech. Corp. v. Walt Disney Imagineering, No. Civ.A. 03-3546, 2003 WL

---

[1] Numerous other courts in this and other circuits have recognized the need for and granted expedited discovery in advance of a preliminary injunction hearing. See, e.g., Lorillard Tobacco Co. v. Omar, LLC, No. 3:03CV1502(RNC), 2003 WL 22216891, at *2 (D. Conn. Sep 12, 2003) (granting expedited discovery); Dial Info. Servs. Corp. of New York v. Thornburgh, 938 F.2d 1535, 1539 (2d Cir. 1991); U.S. Naval Inst. v. Charter Comms., Inc., 875 F.2d 1044, 1046 (2d Cir. 1989); Delphine Software Int'l, S.A.R.L. v. Electronic Arts, Inc., No. 99 Civ. 4454 (AGAS), 1999 WL 627413, at *3 (S.D.N.Y. Aug. 18, 1999) (granting motion for expedited discovery based upon finding that Plaintiff "is entitled to substantial discovery to enable it to proceed with a preliminary injunction hearing"); Advanced Portfolio Techs., Inc., 1994 U.S. Dist. LEXIS 18457, at *7 (S.D.N.Y. Dec. 28, 1994) ("[e]xpedited deposition discovery is made available by Rule[] 30(a) of the Federal Rules of Civil Procedure [and] . . . is often available in cases where preliminary relief is sought"); Educational Comm'n, Foreign Sch. Med. Graduates v. Repik, No. Civ. A. 99-1381, 1999 WL 317052, at *3 (E.D. Pa. 1999) (noting that because "[e]xpedited discovery in connection with a preliminary injunction is appropriate . . . [t]he court will permit the parties a reasonable period of time to conduct discovery relevant to the motion for preliminary injunction, after which a hearing will be scheduled if necessary") (internal citation omitted); Ellsworth Assocs., Inc. v. United States, 917 F. Supp. 841, 844 (D.D.C. 1996) ("Expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings.") (citing Optic-Electronic Corp. v. United States, 683 F. Supp. 269, 271 (D.D.C. 1987)).

22519440, at *4 (E.D. Pa. October 2, 2003) (applying reasonableness standard and finding that, absent extraordinary circumstances, "a district court should decide a motion for expedited discovery 'on the entirety of the record to date *and the reasonableness of the request in light of all of the surrounding circumstances*'") (emphasis added) (citations omitted). Here, good cause exists because Plaintiff faces irreparable harm if it is unable to ascertain the whereabouts of persons and documents that might help it pursue the recovery of some or all of its investment in the Defendant fund. See, e.g., Benham Jewelry Corp. v. Aron Basha Corp., 1997 WL 639037, at *20 (S.D.N.Y. October 14, 1997). Furthermore, good cause exists because Plaintiff has reason to fear that Defendants have taken steps to remove or conceal assets and evidence, and may not preserve the paper and electronic records and other materials that would prove essential to Plaintiff and other investors. See Pod-Ners, LLC v. Northern Feed & Bean, 204 F.R.D. 675, 676 (D. Colo. 2002) (allowing Plaintiff to conduct expedited discovery when materials sought to be discovered might cease to be available if discovery proceeded in normal course). Here, Plaintiff cannot determine with certainty the whereabouts of the assets invested in the funds, the Defendants or their records. At this stage in the proceedings, Plaintiff knows that it has not received the redemption it was promised from Bayou both in the underlying agreements with Defendants and in the July 27 and August 11, 2005 letters. Plaintiff is also aware of the numerous newspaper reports suggesting that Bayou is currently being investigated for potential fraud by numerous governmental bodies. However, Plaintiff does not know the status of its investment in the Bayou funds, nor does it know the whereabouts of Bayou's managers. Given the lack of information regarding Defendants and the funds, and the unusual circumstances, expedited discovery is needed to prevent any risk that discoverable materials and assets become unavailable—intentionally or otherwise.

4

Good cause also exists because courts grant expedited discovery where, as here, Plaintiff has concerns about the possibility that Defendant might hide or move assets. See SEC v. Prater, 289 F. Supp. 2d 39, 55 (D. Conn. 2003) (granting motion for expedited discovery where plaintiff believed that defendant would likely dissipate assets before any potential order of disgorgement could be entered); Comcast of Illinois X, LLC v. Till, 293 F. Supp. 2d 936, 941-42 (E.D. Wisc. 2003) (ordering expedited discovery, in case concerning sales of illegal cable television decoders, where plaintiff showed that other sellers of decoders had "destroyed evidence and secreted assets" and feared that defendant would do the same). Here, Plaintiff has reason to fear that Defendants will hide or dissipate assets before discovery could proceed through normal scheduling because Defendants are under multiple investigations for potential fraud and Defendants have refused to respond to Plaintiff's communications.

Plaintiff also needs expedited discovery so that it may ascertain the identities of any Defendants as yet unnamed in this action. Courts routinely permit expedited discovery for the purpose of ascertaining the identity of unnamed John Doe Defendants. See, e.g., Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (holding that it was error to dismiss unnamed Defendants in light of possibility that their identity could be ascertained via discovery); Valentin v. Dinkins, 121 F.3d 72, 75-76 (2d Cir. 1997) (vacating dismissal where Plaintiff should have been allowed to conduct discovery to determine identity of Defendants). Because Defendants have ceased all communication with Plaintiff, it is currently impossible for Plaintiff to ascertain the identities of parties who might be co-conspirators and therefore named as additional Defendants. Plaintiff should be afforded the opportunity to identify any all Defendants swiftly.

In addition, Plaintiff has good grounds for seeking expedited discovery because the scope of the discovery it seeks would permit it to pursue litigation without causing undue prejudice to Defendants. See Semitool, 208 F.R.D. at 276 ("Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.") Here, Plaintiff seeks only information that would permit prompt resolution of this litigation. Specifically, Plaintiff seeks information concerning the whereabouts of Defendants; the whereabouts of monies it invested in Defendants' funds; the identities of potential Defendants; and other discoverable material that might prove relevant to the status of Plaintiff's investment.

Nor would third parties suffer undue prejudice if this Court entered an order allowing expedited third-party discovery. Some of the documents relating to Bayou's financial dealings may not be in Defendants' possession and may be in the possession of entities that conducted business with Bayou. Specifically, Plaintiff seeks to ensure swift access to any documents in the possession of third-parties concerning Bayou and to any documents or other discoverable material concerning trades that Bayou may have made in the course of managing the funds at issue. In light of the exigencies present here, an order permitting third-party discovery on an expedited basis would give Plaintiff and similarly situated parties the chance to track down assets and evidence before a confusing and rapidly changing situation shifts beyond recognition and available assets and evidence vanish.

II. **THE COURT SHOULD ENTER AN ORDER GRANTING PLAINTIFF'S MOTION TO PRESERVE DOCUMENTS**

The same factors that necessitate expedited discovery here also require an order granting Plaintiff's motion to preserve documents. Given the uncertainty surrounding Defendants' business at this time, and in light of Defendants' lack of communication with Plaintiff and other

6

investors, real concern exists regarding the continued integrity of Defendants' discoverable materials. Moreover, Plaintiff would be deeply and irreparably harmed in the event that Defendants' documents were not preserved. A court order mandating document preservation is therefore essential.

Common law imposes upon all parties a duty to preserve documents. "A party is under an obligation to preserve . . . evidence when the party 'has notice that the evidence is relevant to litigation' or when it 'should have known that the evidence may be relevant to future litigation.'" Pace v. Nat'l R.R. Passenger Corp., 291 F. Supp. 2d 93, 98 (D. Conn. 2003) (quoting Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 436 (2d Cir. 2001). Furthermore, "the obligation to preserve evidence even arises prior to the filing of a complaint where a party is on notice that litigation is likely to be commenced." Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 73 (S.D.N.Y. 1991); see also Kronisch v. United States, 150 F.3d 112, 127 (2d Cir. 1998) (holding that defendant had duty to preserve documents); Ruta v. Delta Air Lines, Inc., 324 F. Supp. 2d 524, 526-27 (S.D.N.Y. 2004) (holding that party on notice of likely litigation had duty to preserve documents). Indeed, the duty to preserve records exists even absent a court order mandating preservation. See, e.g., Thompson v. U.S. Dep't of Housing & Urban Dev., 219 F.R.D. 93, 100 (D. Md. 2003).

Defendants here know that litigation concerning the Bayou funds has already been filed in other courts. See, e.g., Idemnity Ins. Co. of N. Am. v. Liebert Corp., No. 96 CIV. 6675(DC), 1998 WL 363834, at *3 (S.D.N.Y. June 29, 1998) (holding that party was on notice of future litigation in part because of the "sheer magnitude of the losses" suffered by opposing party). Thus, the law imposes upon Defendants a duty to preserve documents and other discoverable materials.

7

Nevertheless, the unusual circumstances at hand warrant further safeguards. Courts have established a three-part test governing motions to preserve documents: (1) the level of concern for the continuing existence of the evidence absent a court order; (2) the risk of irreparable harm to the moving party absent an order; and (3) the ability of the party in possession of the evidence to maintain it. See Capricorn Power Co. v. Siemens Westinghouse Power Corp., 220 F.R.D. 429, 433-34 (W.D. Pa. 2004). In Capricorn Power, the court noted that issuance of an order could be appropriate "without the necessity of establishing that the evidence will necessarily be relevant and admissible at trial." Id. at 434 (stating that scope of order could extend to all material discoverable pursuant to Federal Rule of Civil Procedure 26(b)(1)).

The first prong of the Capricorn test concerns the risk that, absent a court order, evidence crucial to litigation might not be preserved. At least one federal court has found the existence of such risk where the moving party feared that the party in possession of documents might go out of business or might otherwise take actions resulting in compromised discovery. See Antioch Co. v. Scrapbook Borders, Inc., 210 F.R.D. 645, 649-50 (D. Minn. 2002) (granting motion to preserve documents where moving party was "apprehensive and harbor[ed] concerns that . . . documents [would] be intentionally altered, destroyed, 'lost' or otherwise spoiled by the Defendants"). Here, a court order is needed to preserve evidence relevant to Bayou Group's financial dealings. Indeed, an order can help to enforce the obligations that a party already has under a duty to preserve records. See Gates Rubber Co. v. Bando Chem. Indus., Ltd., 167 F.R.D. 90, 112 (D. Colo. 1996) (granting order to preserve documents where party was already under duty to preserve). Here, Bayou's principals cannot be located. Calls to Bayou Group's office go unanswered. The shadowy uncertainty evokes the specter of Enron and other situations in which

8

documents were lost amidst the confusion. An order to preserve documents would help safeguard Plaintiff's ability to pursue its claims and uncover all relevant facts.

The second prong of the <u>Capricorn</u> test involves the risk of irreparable harm to Plaintiff absent an order mandating document preservation. Here, the risk of irreparable harm to Plaintiff and to similarly situated parties is manifest. If the integrity of discoverable material held by Defendants is compromised, Plaintiff and other investors may be deprived of their ability to seek redress for their claims. No remedy at law could compensate Plaintiff for the loss of its ability to litigate fairly. Thus, an order requiring document preservation is essential to prevent what would constitute irreparable injury to Plaintiff and other investors.

The third <u>Capricorn</u> prong focuses on the ability of those holding the documents to maintain and preserve them. Here, the Bayou Group is controlled by a few individuals, who control the operations of the various Bayou entities. It would not burden Defendants in any way to issue an order compelling them to preserve any discoverable material held by them.

Moreover, extending such an order to third-parties would not unduly burden those parties in any way. Those parties would simply be required to maintain any discoverable material they possessed relating to their relationship with Defendants. In other words, the order would merely preserve the status quo; it would not compel Defendants or third parties to take any extraordinary measures beyond those already taken during their regular course of business.

Accordingly, this Court should grant the Federation's Motion for Expedited Discovery and for Preservation of Documents.

9

Jewish Federation of Metropolitan Chicago
By its attorneys,

/s/

William L. Prickett
Kent D.B. Sinclair, Fed. Bar No. ct14649
Noah Lang
Jodi D. Luster
SEYFARTH SHAW, LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210
Tel: 617-946-4800
Fax: 617-946-4801
Ksinclair@seyfarth.com

Gerald T. Giaimo  ct 141885
Tyler Cooper & Alcorn, LLP
205 Church St.
New Haven, CT 06509-1910
Tel: 203-784-8557
Fax: 203-865-7865
Giaimo@tylercooper.com

10